IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| MICHAEL ANDERSON, | ) | |
| | ) | 4:13-cv-00301-RP-RAW |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | ON DEFENDANTS' MOTION |
| JOHN BALDWIN; TERRY MAPES; | ) | FOR SUMMARY JUDGMENT |
| JILL DURSKY; KATHY KERR; | ) | |
| KRISTINE WEITZEL; TERESA | ) | |
| SPARKS; SCOTT MILLER; RICH | ) | |
| HUTTON; SHIFT CAPT. WHITE, | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court is defendants' motion for summary judgment [8]. Plaintiff has not filed a resistance although the Court *sua sponte* extended the time to do so. The motion is considered on the papers. LR 7.c.

Michael Anderson was a "safekeeper"[1] detained at the Independent Living Unit ("ILU") in the Newton Correctional Facility ("NCF") pending resolution of civil commitment proceedings pursuant to Iowa Code Ch. 229A (civil commitment process for sexually violent predators). On July 7, 2013 Mr. Anderson brought a lawsuit

---

[1] Under the Iowa Sexually Violent Predator Act, a "safekeeper" is typically a person who has completed service of a prison sentence for a sexually violent offense and is awaiting civil commitment proceedings upon a judicial probable cause determination that the person "suffers from a mental abnormality which makes the person likely to engage in predatory acts constituting sexually violent offenses if not confined in a secure facility." Iowa Code § 229A.2(11); *see id.* §§ 229A.2(8), .5(1)-(5).

pursuant to 42 U.S.C. § 1983 alleging defendants[2] violated his procedural and substantive due process rights when he was transferred from ILU to a lock-up cell within the walls at NCF after an allegation that he engaged in sexual misconduct with another safekeeper at the ILU. Defendants deny they violated his civil rights. Since the time this lawsuit was filed the civil commitment proceedings were terminated and Mr. Anderson was released from ILU. The present motion asserts Mr. Anderson's Due Process rights were not violated, that defendants are entitled to qualified immunity, and that any equitable relief request is moot. Mr. Anderson has not responded to the motion.

## I.

### SUMMARY JUDGMENT

A party is entitled to summary judgment if the affidavits, pleadings, and discovery materials demonstrate "there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Young v. Builders Steel Co.*, ___ F.3d ___, 2014 WL 256835, at *2 (8th Cir. June 9, 2014)(quoting Fed. R. Civ. P. 56(a)); *Schueller v. Goddard*, 631 F.3d 460, 462 (8th Cir. 2011)(quoting *Myers v. Lutsen Mtns. Corp.*, 587 F.3d 891, 893 (8th Cir. 2009)); *Cross v. Prairie Meadows Racetrack & Casino, Inc.*, 615 F.3d 977, 981 (8th Cir. 2010)(citing *Roeben v. BG Excelsior Ltd.*

_____

[2] The defendants are the director of the Iowa Department of Corrections ("IDOC")(John Baldwin), the NCF warden (Terry Mapes), and other IDOC and NCF prison officials.

*Partnership*, 545 F.3d 639, 642 (8th Cir. 2008)). The Court must view the facts in the light most favorable to the party resisting summary judgment, and give that party the benefit of all reasonable inferences which can be drawn from them, that is, "reasonable inferences that may be drawn without resorting to speculation." *Hitt v. Harsco Corp.*, 356 F.3d 920, 923-24 (8th Cir. 2004); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Young*, ___ F.3d at ___, 2014 WL 2565835, at *2; *Howard v. Columbia Public Schl. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004)("unreasonable inference or sheer speculation" not accepted as fact). A resisting party must "go beyond the pleadings and by affidavits, depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue of material fact." *Rouse v. Benson*, 193 F.3d 936, 939 (8th Cir. 1999); *see Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 831-32 (8th Cir. 2008).

## II.

## FACTS

The facts are undisputed as Mr. Anderson has not filed a resistance to the motion. LR 56.b, .c. In 2013 Mr. Anderson was detained as a "safekeeper" in the ILU at NCF awaiting a civil commitment proceeding. He had been in this status for some time while other litigation concerning his status and his civil commitment proceedings was pending. On June 11, 2013 he was

transferred from the ILU due to an allegation of sexual misconduct with another safekeeper at ILU. (Def. App. [8-3] at 4, 41). Mr. Anderson was the alleged perpetrator. (*Id.*) Mr. Anderson was held in Living Unit A (LUA) at NCF from June 11, 2013 through August 27, 2013 while officials investigated the allegation. (*Id.* at 20). Mr. Anderson was returned to ILU when the investigation was completed and the allegation of misconduct was determined to be unfounded. NCF does not have an alternative, non-inmate facility for safekeepers other than ILU. The other inmate involved was removed from the ILU and housed in Living Unit B (LUB). (*Id.* at 41).

While he was housed in LUA Mr. Anderson received the same treatment as the inmates in the unit who are serving prison sentences. LUA houses detention, investigative segregation, summary segregation and Tier Incentive Program Level 1 inmates. Recreation is one hour per day, five days per week. Showers are three times per week. Inmates have access to reading materials and are served the same meals as general population inmates and safekeepers. Legal correspondence, phone calls, and legal visits are permitted. (Def. App. [8-3] at 41).

In his affidavit Warden Mapes states that the transfer was made for safety and security reasons, for Anderson, the other safekeeper allegedly involved and the other safekeepers residing at ILU. (Def. App. [8-3] at 41). There are no facilities at the ILU to segregate a safekeeper in such a situation. (*Id.* at 41-42). The ILU

4

is a converted farmhouse on the grounds of NCF with bedrooms, a living room, a kitchen and three bathrooms in which the safekeepers live in relative freedom. There is no way to securely isolate safekeepers from each other. (*Id.* at 41). The investigation was partially delayed by Mr. Anderson's appointed counsel in the civil commitment proceedings. (*Id.* at 18, 42).

At the conclusion of the investigation, Mr. Anderson was returned to ILU. (Def. App. [8-3] at 20, 9). The civil commitment proceedings against Mr. Anderson were subsequently dismissed and he was released on October 30, 2013. (*Id.* at 1, 42).

### III.

### LAW AND ADDITIONAL FINDINGS

As noted in rulings in other cases involving Mr. Anderson, *see, e.g.*, Report and Recommendation [37], *Anderson v. Baldwin*, 4:11-cv-00219-RP-RAW (S.D. Iowa April 24, 2013), the conditions of his confinement as a safekeeper were governed by the Court-approved class action settlement in *Atwood v. Vilsack*, 338 F. Supp. 2d 985 (S.D. Iowa 2004). That agreement provides in pertinent part: "The Iowa Department of Corrections may place any safekeeper in a more secure or alternate placement at anytime depending on the health, safety or security considerations of the individual safekeeper." (Def. App. [8-3] at 37). In the absence of resistance by Mr. Anderson, there is nothing in the record to controvert defendants' assertions that (1) Mr. Anderson was under

investigation concerning an allegation of sexual misconduct at ILU, (2) the sexual misconduct allegation implicated safety and security concerns at ILU, (3) defendants had no other place to place Mr. Anderson (and the other safekeeper allegedly involved in the incident) during the investigation except in the secure setting of a living unit in NCF, and (4) once the investigation was concluded, Mr. Anderson was returned to ILU.

The conditions in LUA were comparatively spartan. The Court assumes for present purposes that Mr. Anderson's investigative segregation deprived him of a protected liberty interest. At the time he was placed in investigative segregation Mr. Anderson was provided with a notice which informed him that that was the purpose for his segregation. (Def. App. [8-3] at 23). He evidently was not then told what the investigation was about, but his attorney in the civil commitment proceeding was aware and his office informed Mr. Anderson within a week who his accuser was and of what Mr. Anderson was accused. (*Id.* at 5). Each week while in segregation Mr. Anderson met with an NCF classification committee and the need for his continued placement was reviewed. (*Id.* at 24-35). On these occasions he had an opportunity to raise any concerns he had. (*Id.* at 42). The meaningfulness of the reviews is not disputed. Notice and frequent review of need are the procedural safeguards when a person in detention is segregated in a more restrictive status to investigate alleged misconduct. *See*

6

*generally Hewitt v. Helms*, 459 U.S. 460, 477 (1983); *Williams v. Hobbs*, 662 F.3d 994, 1000, 1006-09 (8th Cir. 2011), *cert. denied*, 133 S. Ct. 243 (2012)(citing *Kelly v. Brewer*, 525 F.2d 394, 400 (8th Cir. 1975)).

Having served his sentence Mr. Anderson could not, consistent with the substantive component of the Due Process Clause, be punished as if he were still an inmate.

> [A] particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.

*Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007), *cert. denied*, 552 U.S. 1180 (2008)(quoting *Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999)).

All those in the ILU farmhouse were there because a court had found probable cause to believe they were a risk to engage in sexually violent offenses due to a mental abnormality. Clearly, the safety and security of the ILU unit and other detainees made it reasonable to remove and segregate an ILU detainee who was accused of sexual misconduct with another detainee, as well as to segregate the detainee from general population inmates at NCF. LUA and LUB were the only units in which Mr. Anderson could be segregated. It is undisputed that prison officials acted not to punish, but to protect the safety and security of the institution and those within

it. Mr. Anderson's investigative segregation was rationally related to this legitimate, non-punitive government purpose and was not excessive in light of that purpose.

Even if the circumstances made out a violation of Mr. Anderson's due process rights, those defendants involved in the decision to segregate him would be entitled to qualified immunity because the contours of his due process rights in context here were not "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating" those rights. *Plumhoff v. Rickard*, 572 U.S. ___, __, 134 S. Ct. 2012, 2023 (2014)(quoting *Ashcroft v. Al-Kidd*, 563 U.S. ___, ___, 131 S. Ct. 2074, 2083-84 (2011)). As this Court observed in finding some of the same defendants entitled to qualified immunity in a case brought by Mr. Anderson involving an incident of disciplinary detention, "there is little case law giving guidance to the Department of Corrections regarding acceptable procedures for managing behaviors of people being held pending civil commitment proceedings." *Anderson v. Baldwin,* No. 4:11-cv-00219-RP-RAW, Order [47] at 7 (S.D. Iowa Mar. 5, 2014). It follows existing precedent did not place the constitutional question here "beyond debate." *Plumhoff*, 572 U.S. at __, 134 S. Ct. at 2023 (quoting *Ashcroft*, 563 U.S. at ___, 131 S. Ct. at 2083-84). In fact, Mr. Anderson's

investigative segregation comported with the only directly applicable case precedent, the *Atwood* consent decree.[3]

## IV.

## RECOMMENDATION AND ORDER

IT IS RESPECTFULLY RECOMMENDED that defendants' motion for summary judgment [8] be granted and judgment be entered dismissing the complaint.

IT IS ORDERED that the parties have until **July 14, 2014** to file written objections to the Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1). *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Wade for Robinson v. Callahan*, 976 F. Supp. 1269, 1276 (E.D. Mo. 1997). Any objections filed must identify the specific portions of the Report and Recommendation and relevant portions of the record to which the objections are made and must set forth the basis for such objections. *See* Fed. R. Civ. P. 72; *Thompson*, 897 F.2d at 357. Failure to timely file objections may constitute a waiver of a party's right to appeal questions of fact. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994); *Halpin v. Shalala*, 999 F.2d 342, 345 & n.1, 346 (8th Cir. 1993); *Thompson*, 897 F.2d at 357.

---

[3] To the extent Mr. Anderson seeks equitable relief, his discharge from the facility moots the issue. *Roubideaux v. North Dakota Dep't of Corrections and Rehabilitation*, 570 F.3d 966, 976 (8th Cir. 2009)(female inmates facility-specific claims for injunctive relief mooted by their transfer to another facility).

IT IS SO ORDERED.

Dated this 20th day of June, 2014.

 

 

 

 

_____
ROSS A. WALTERS
UNITED STATES MAGISTRATE JUDGE